Addeller O. WELCH, Appellee,

v.

Larry Don ARMER, Appellee,

v.

UNION MUTUAL INSURANCE COMPA-
NY OF PROVIDENCE, Appellant.

No. 68427.

Supreme Court of Oklahoma.

June 27, 1989.

**848**

Paul Antonio Lacy, Oklahoma City, for appellee.

Best, Sharp, Thomas, Glass & Atkinson by Joseph A. Sharp and John H.T. Sheridan, Tulsa, for appellant.

DOOLIN, Justice.

The issues presented in this case are ones of first impression. First, must a claimant's uninsured motorist coverage be exhausted before a claim can be made against the Oklahoma Guaranty Association? Second, can the uninsured motorist carrier maintain a claim of indemnity against the tort-feasor?

We hold 36 O.S.1981 §§ 3636 and 2012 *prior* to amendment are controlling and require claimants to first exhaust claims against their own uninsured motorist carrier before they can recover against the Guaranty Association. Further, the uninsured motorist carrier may maintain a claim against the tort-feasor, *but only* for amounts above the limits of tort-feasor's policy with the insolvent insurer.

### I.

On November 30, 1984, a vehicle driven by Larry Don Armer (Tort-feasor) collided with a vehicle driven by Addeller O. Welch (Welch). Tort-feasor's liability insurer was insolvent. Union Mutual Insurance Company of Providence (Union Mutual) provides uninsured motorist coverage to Welch.

On December 10, 1985, Welch filed a Petition against tort-feasor for negligence and against Union Mutual for coverage of the accident. Union Mutual filed an Answer, and a Cross–Claim against Armer for indemnification pursuant to The Oklahoma Property and Casualty Insurance Guaranty Association Act (Guaranty Act). 36 O.S. 1981 § 2001, et seq.

Tort-feasor then filed a motion to dismiss the cross-claim asserting Union Mutual's claim was barred by 36 O.S.1981, § 3636(E) because he was an uninsured motorist pursuant to 36 O.S.1981 § 3636(C). Tort-feasor also moved to strike defenses in Union Mutual's answer which denied he was uninsured or under-insured at the time of the accident.

In addition, tort-feasor filed a motion for declaratory judgment. He asked the court to declare that a judgment for Welch must first be satisfied by Union Mutual before any recovery against him or the Guaranty Association. Tort-feasor further requested the court to declare that the statutory amendments to § 2012 of the Guaranty Act could not be retroactively applied.

Union Mutual responded to tort-feasor's motions claiming: 1) the Guaranty Association's obligation is primary to that of the uninsured motorist carrier, 2) Union Mutual, as the uninsured motorist carrier, can maintain an action against tort-feasor, and 3) the amendments to § 2012 of the Guaranty Act must be applied retroactively.

The District Court issued an Order dismissing Union Mutual's cross-claim, and its defenses relating to tort-feasor being an uninsured motorist. The Order also overruled tort-feasor's motion for declaratory judgment as being moot.

Union Mutual appeals.

### II.

To establish primary liability, we first turn to 36 O.S.1981 § 3636. This section provides that liability insurers of motor vehicles are to provide uninsured mo-

torist coverage to their policy holders. The purpose of this coverage is to provide insured persons who are are legally entitled to recover damages from owners or operators of an uninsured or under-insured vehicle with a means of recovery. Section 3636 is relevant to this case because it defines the term uninsured motor vehicle to include "... an insured motor vehicle where the liability insurer thereof is unable to make payment with respect to the legal liability of its insured within the limits specified therein because of insolvency."

Union Mutual, as the liability insurer of claimant Welch, provides uninsured motorist coverage to be used in the event Welch has a claim against an uninsured or under-insured motorist. Tort-feasor argues he is an uninsured driver in accordance with this provision because his liability insurer is unable to make payment due to the insurer's insolvency. Thus, tort-feasor asserts, this section places an obligation upon Union Mutual, as the uninsured motorist carrier, to pay Welch's claim.

While this statute appears controlling, it must be read in conjunction with the Insurance Guaranty Association Act which was also passed to avoid financial loss to claimants due to the insolvency of an insurer. 36 O.S.1981 § 2002.

Specifically, the Guaranty Act establishes a Guaranty Association to, inter alia, pay the claims of policy holders and other claimants of an insolvent member insurer. 36 O.S.1981 §§ 2002, 2005, and 2007.

The act would appear to require the Guaranty Association pay the claims against tort-feasor, up to the limits set out in tort-feasor's policy, due to the insolvency of his insurer. However, § 2012 contains an exhaustion of claims provision which, as amended, provides:

> Any person having a claim against an insurer under any provision of an insurance policy other than a policy of the insolvent insurer which is also a covered claim shall be required to first exhaust his rights under such policy. Any amount payable on a covered claim under this act shall be reduced by the amount of any recovery under such other insurance policy. *The provision of this subsection shall not apply to uninsured motorist coverage.* (Emphasis added.)

The last sentence of this provision is an amendment added subsequent to the accident. Union Mutual maintains that prior to amendment, the statute is ambiguous and unclear. It then concludes that the amendment is merely a *clarification* of the statute and, citing *Magnolia Pipeline Co. v. Okla. Tax. Comm.*, 196 Okl. 633, 167 P.2d 884 (1946), should therefore be applied retroactively.

We cannot agree. The provision, prior to amendment, is very clear and unambiguous. It requires claimants to exhaust all other covered claims against insurers, under insurance policies, before they can make a claim against the Guaranty Association.

This view has been adopted by numerous other states with similar statutes.[1] In addition, this interpretation is consistent with § 3636 as discussed above, in holding the uninsured motorist carrier primarily liable.

Union Mutual's reliance upon *Hickerson v. Protective National Insurance Company of Omaha*,[2] is misplaced. In *Hickerson*, the Louisiana court did hold that the Guaranty Fund was primarily liable. However, the court pointed out that this interpretation was adopted because Louisiana, at that time, did not have a provision prohibiting the claimant's uninsured motorist carrier from recovering against the tort-feasor should the carrier be held primarily liable.

The court reasoned that if the uninsured motorist carrier was held primarily liable it would simply recover from the tort-feasor

**1.** This issue was considered and an identical result was reached in Kentucky, *Kentucky Insurance Guaranty Assoc. v. State Farm Mutual Automobile Ins. Co.*, 689 S.W.2d 32 (Ky.Ct.App. 1985); Indiana, *Indiana Ins. Guar. Ass'n. v. Kiner*, 503 N.E.2d 923 (Ind.App. 3 Dist.1987); Illinois, *Lucas v. Illinois Ins. Guaranty Fund*, 52 Ill.App.3d 237, 10 Ill.Dec. 81, 367 N.E.2d 469 (1977); Massachusetts, *Kinney v. Leaman*, 14 Mass.App. 926, 436 N.E.2d 996 (1982).

**2.** 383 So.2d 377 (La.1980).

on its subrogated claim. In essence, a Louisiana tort-feasor would be treated as though he did not have liability insurance.

Oklahoma, on the other hand, has such a non-recourse provision which prevents the uninsured carrier from recovering against the tort-feasor, at least up the amount of the tort-feasor's liability coverage.[3] Therefore, we decline to follow the Louisiana rule.

Thus, the statute prior to amendment requires a claimant against an insolvent insurer to exhaust all other covered claims he may have against insurer, under an insurance policy, before he may recover against the Guaranty Association. Therefore, prior to the amendment, Welch must exhaust her claim against Union Mutual before she can recover against the Guaranty Association. Any amount payable to Welch under the Guaranty Act will be reduced by the amount recovered by her under her uninsured motorist coverage.

■ We now turn to the interpretation of the amendment. Tort-feasor argues that the amendment is to be read as saying that a person making a claim under the uninsured motorist coverage provided by an insolvent insurer is not required to exhaust any other insurance claims he might have before recovering against the Guaranty Association.

We believe the better view is to interpret the amendment literally as excluding uninsured motorist coverage from the types of claims that must be exhausted. That is, persons having a claim against an insolvent insurer must exhaust all claims they may have against insurers, *except* those against their uninsured motorist carrier, before filing a claim against the Guaranty Association.

This interpretation does not contradict § 3636 or render it useless. The uninsured motorist carrier would still be primarily liable if the tort-feasor is truly uninsured,

or if the tort-feasor's insolvent liability carrier does not belong to the Guaranty Association.

Simply put, prior to the amendment Welch must exhaust her claim against Union Mutual before she can recover against the Guaranty Association. After the effective date of the amendment she does not have to do so.

Since we have established that the application of the amendment alters the outcome of this issue we must now turn to the question of whether the amendment is applicable.

■ The general rule in Oklahoma is that statutes, and amendments, are to be construed to operate only prospectively unless the Legislature clearly expresses a contrary intent.[4] However, as Union Mutual points out, remedial or procedural statutes which do not create, enlarge, diminish, or destroy vested rights are generally held to operate retrospectively.[5] Union Mutual argues that the amendment falls within this exemption. We cannot agree.

■ The amendment does not clarify the provisions of § 2012, but rather alters it to exclude uninsured motorist coverage from those claims which must be exhausted before recovery against the Guaranty Association will be allowed. This *substantive* change alters the rights and obligations of claimants, the Guaranty Association, and the uninsured motorist carrier. Therefore, it cannot be viewed as solely a remedial or procedural change, nor can it be said to clarify the subsection. Consequently, the amendment does not fall within this exception and cannot be retroactively applied.

■ Union Mutual further argues that § 2012 involves rights of indemnification which are not enforceable until after a judgment is rendered. Therefore, § 2012, as amended, must be applied to this case since the right of indemnification will ac-

---

3. 36 O.S.1981 § 3636. See also, 36 O.S.1985 Supp. § 2004(6) which provides "in no event may any such claim (by or for the benefit of an insurer) be asserted in any legal action against the insured of such insolvent insurer."

4. *Trinity Broadcasting Corp. v. Leeco Oil Co.*, 692 P.2d 1364 (Okl.1984); *Wilson v. State, ex rel., Okla. Tax Comm.*, 594 P.2d 1210 (Okl.1979).

5. *Magnolia Pipeline Co. v. Okla. Tax Comm.*, 196 Okl. 633, 167 P.2d 884 (1946).

crue, if ever, after the passage of the amendment. This argument is without merit and deserves little consideration. While it is true that rights of indemnification are not enforceable until after judgment, it does not follow that statutes passed prior to the enforcement of the right should be applied retroactively. In addition, § 2012 is concerned with primary liability not rights of indemnification.

Because the amendment cannot be retroactively applied, Welch's claim against Union Mutual must be exhausted before she can recover from the Guaranty Association.

### III.

Union Mutual next asserts that the trial court erred in not allowing it to maintain a claim against tort-feasor. Tort-feasor contends 36 O.S. §§ 3636(E) and 2004(6) expressly prohibits such a claim. Title 36 O.S.1981 § 3636, provides in pertinent part:

(C) For the purposes of this coverage the term 'uninsured motor vehicle' shall include an insured motor vehicle where the liability insurer thereof is unable to make payment with respect to the legal liability of its insured within the limits specified therein because of insolvency....

\*       \*       \*       \*       \*       \*

(E) In the event of payment to any person under the coverage required by this section and subject to the terms and conditions of such coverage, the insurer making such payment shall, to the extent thereof, be entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury for which such payment is made, including the proceeds recoverable from the assets of the insolvent insurer. Provided, however, with respect to payments made by reason of the coverage described in subsection (C) above, the insurer making such payment shall not be entitled to any right of recovery against such tort-feasor in excess of the proceeds recovered from the assets of the insolvent insurer of said tort-feasor....

The clear intent of the Legislature in enacting this subsection was to give the uninsured motorist carrier a right to recover against the truly uninsured tort-feasor. However, the Legislature also wanted to protect those considered "uninsured" because of the insolvency of their liability carrier. That is, the person who is considered "uninsured" because of subsection (C) should be in no worse position than if his liability insurer had not become insolvent.

On the other hand, we can find no reason why a tort-feasor should be in any *better* position due to the fortuitous insolvency of his insurer. A literal reading of § 3636(E) would prevent any recovery by an insurer against a tort-feasor. Consequently, a tort-feasor whose liability insurer is insolvent would not be liable for claims in excess of his coverage, while a tort-feasor with a solvent insurer would be liable for such claims. Thus, under this view, a tort-feasor would be in a better position if his insurer were insolvent than if his insurer were solvent.

We believe this is contrary to the intent of the Legislature. See, *WRG Construction Co. v. Hoebel,* 600 P.2d 334, 337 (Okl. 1979) ("Once the intention of the legislature appears clear from a consideration of its total enactment, language may be altered and new words supplied to give it that meaning which is necessary to effectuate legislative intent.") Subsection (E) must be read with respect to the coverage described in subsection (C), and the intent of the Guaranty Act. Therefore, we hold that an uninsured motorist carrier is prohibited from asserting claims against those considered "uninsured" because of subsection (C) *only* up to the limits of the policy between insolvent insurer and its insured.

Tort-feasor also asserts that Union Mutual's claim against him is not a covered claim according to 36 O.S.1985 Supp. § 2004(6). Therefore, the claim is barred. This section provides in relevant part:

"Covered Claim" shall not include any amount awarded as punitive or exemplary damages; sought as a return of premium under any retrospective rating plan; or due any reinsurer, insurer, in-

**852**

surance pool, or underwriting association, as subrogation recoveries or otherwise; provided that a claim for any such amount, asserted against a person insured under a policy issued by an insurer which has become an insolvant insurer, which, if it were not a claim by or for the benefit of a of a reinsurer, insurer, insurance pool or underwriting association would be a "covered claim" may be filed directly with the receiver of of the insolvent insurer; but in no event may any such claim be asserted in any legal action against the insured of such insolvent insurer....

For the reasons set out above, we must interpret this subsection as excluding claims of an insurer *only* up to the limits of the policy between the insolvent insurer and its insured. This interpretation places the tort-feasor who is considered "uninsured" due to § 3636(E) in the same position he would have been in had his insurer not become insolvent.

### IV.

Finally, Union Mutual argues that the District Court was without subject matter jurisdiction to decide by declaratory judgment the coverage afforded by an insurance policy. In this regard, Union Mutual relies on 12 O.S.1981 § 1651 which provides:

No declaration shall be made ... concerning obligations alleged to arise under policies of insurance covering liability or indemnity against liability for injuries to property and person.

This argument is without merit because no declaratory judgment was ever rendered.

The judgment of the trial court is AFFIRMED IN PART, REVERSED IN PART, and REMANDED for proceedings not inconsistent with this opinion.

HARGRAVE, C.J., OPALA, V.C.J., and HODGES, LAVENDER, SIMMS, ALMA WILSON and KAUGER, JJ., concur.